**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: June 10, 2019
Date Decided: July 1, 2019

Brian E. Farnan, Esquire
Michael J. Farnan, Esquire
Rosemary J. Piergiovanni, Esquire
Farnan LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801

Kevin G. Abrams, Esquire
J. Peter Shindel, Jr., Esquire
Matthew L. Miller, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

Anthony A. Rickey, Esquire
Margrave Law LLC
8 West Laurel Street, Suite 2
Georgetown, DE 19947

Gregory V. Varallo, Esquire
Kevin M. Gallagher, Esquire
Robert L. Burns, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

Jeremy D. Eicher, Esquire
Eicher Law LLC
1007 N. Orange Street, 4th Floor
Wilmington, DE 19801

Re:  *Shiva Stein v. Lloyd C. Blankfein, et al.*, C.A. No. 2017-0354-SG

Dear Counsel:

This matter is before me on a request for attorneys' fees under the corporate

benefit doctrine. The underlying action involved direct and derivative claims filed

against certain directors (the "Director-Defendants") of The Goldman Sachs Group,

Inc. ("Goldman") by a stockholder, Shiva Stein.[1] The parties reached a settlement

---

[1] As mentioned below and as explained in my Memorandum Opinion of May 31, 2019, I have granted in part and denied in part the Defendants' Motion to Dismiss (filed by the Director-

that required this Court's approval before taking effect.[2] In connection with the settlement hearing, another stockholder, Sean Griffith (the "Objector"), filed an objection.[3] His counsel filed briefs and appeared at the settlement hearing to oppose the settlement. Ultimately, I rejected the settlement,[4] and the matter proceeded on the Defendants' Motion to Dismiss, which I granted in part and denied in part.[5] The remaining claim involves an allegation of self-dealing by the Director-Defendants regarding their compensation.[6] The Objector now seeks an award for attorneys' fees and expenses under the corporate benefit doctrine.

Our case law regarding fees is well established. Under the default American rule, each party bears her own fees. There are exceptions. Pertinent here is the corporate benefit doctrine, a subspecies of the common benefit doctrine. Briefly, where an individual creates a common benefit for a group or entity, those sharing the benefit should share also a proportion of the expense required to create the benefit.[7] Our Supreme Court has laid out the factors pertinent to setting such a fee

---

Defendants and joined by Goldman), and dismissed all but one count brought by the Plaintiff derivatively against the Defendants. *See Stein v. Blankfein*, 2019 WL 2323790 (Del. Ch. May 31, 2019).

[2] D.I. 27.

[3] D.I. 36.

[4] *Stein v. Blankfein*, 2018 WL 5279358 (Del. Ch. Oct. 23, 2018).

[5] *Stein v. Blankfein*, 2019 WL 2323790 (Del. Ch. May 31, 2019).

[6] *Id.* at *8.

[7] *See, e.g.*, *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997).

in *Sugarland Industries, Inc. v. Thomas*.[8]  Most important to my analysis here is the benefit created by the Objector.

The Objector considered the litigation, and the proposed settlement, as valueless to Goldman.  He opposed the release of claims as well as the legal fee sought by the Plaintiff (also under the corporate benefit doctrine) as unjustified, given the "get" by Goldman, which, again, the Objector saw as valueless.  I do not mean to oversimplify the Objector's argument, which was ably briefed and argued in response to a proposed settlement compromising a confusing blend of direct and derivative claims involving not only corporate law, but federal securities and federal tax law as well.  I found the Objector's written and oral advocacy helpful in the context of the settlement hearing, although my conclusions were not entirely congruent with the Objector's.

I ultimately denied the settlement because I could not be sure that the very modest corporate actions promised by the Defendants, balanced against the claims given up by Goldman, presented a fair outcome.  In this context, I find that the Objector's actions contributed to several benefits for Goldman.  It avoided a

---

[8] 420 A.2d 142 (Del. 1980).  The *Sugarland* factors are: "1) the results achieved; 2) the time and effort of counsel; 3) the complexity of the issues; 4) whether counsel were working on a contingent fee basis; and 5) counsel's standing and ability." *Loral Space & Commc'ns, Inc. v. Highland Crusader Offshore Partners, L.P.*, 977 A.2d 867, 870 (Del. 2009); *see also EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429, 433 n.22 (Del. 2012).

$575,000[9] fee request the Plaintiff sought in connection with the settlement.[10] The objection also aided the survival of the compensation claim against the Director-Defendants, which, if entirely successful, could return approximately $8 million to Goldman; obviously, the value of that claim remains to be litigated and its present value is—substantially—less.

With respect to the first amount, if I attribute the entire avoided fee request to the Objector's actions and consider a one-third contingency fee, that would imply, at most, a fee of $192,000. That would be the outer limit of the equitable fee in that regard. If I credit the Objector with half of that fee avoidance, which I find reasonable, that maximum amount drops somewhat below $100,000. The value of the compensation claim, which the Objector fortuitously helped preserve, is harder to calculate, but must be accounted for as well. Finally, because the proposed release was broader than the claims actually asserted, there may have been unknown claims preserved, and thus additional benefits worked by the Objector, in avoiding that release.[11] In generating these benefits, Objector's counsel proceeded on a contingent-fee basis, and invested around 313.7 hours of time, as of the time

---

[9] D.I. 27, ¶ 14.

[10] Of course, ultimately the Plaintiff here may also be entitled to a fee, but that will be in the context of a successful derivative damages claim, if one exists.

[11] I note that the parties to the settlement agreed to narrow the release after the Objector lodged his objection. *See* D.I. 45, Ex.B.

following the settlement hearing, and incurred cost of around $1,900.[12] This provides a useful check on any award.

As far as the other *Sugarland* factors, the issues here concerning the interplay of direct and derivative claims in the context of the settlement request were complex, and to some extent, novel. The issue of the value of the claims compromised in the proposed settlement was complicated as well. The Objector's litigation aided the Court in both sets of issues. I note that counsel for the Objector and for the litigants are well-respected and competent. Because I found the objection helpful, and because I find both tangible and potential benefits of the objection to Goldman, a substantial fee is warranted.

Taking into account all these factors, I find an award of $100,000 to Objector's counsel to be equitable. In addition, I allow $1,923.30 for costs.

To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

---

[12] D.I. 78, ¶ 20.